THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

BOU-MATIC, LLC, et al.,

     Plaintiffs,

  v.                                        19-CV-158-SLC

MICHAEL A. MILLS,

     Defendant.

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

---

## I.    Introduction

Michael Mills ran the business operations of Bou-Matic, a dairy equipment seller, until February 2019. Bou-Matic's owner, John Kotts, refused to pay Mills the full bonus compensation previously agreed. Mills sued Kotts in Texas state court to recover the bonuses. Bou-Matic, Kotts, and two Kotts-related entities filed this federal lawsuit. In their original complaint, they alleged that Mills deleted some files from his computer, and the rest of the complaint focused on actions that Plaintiffs attributed to Mills' pursuit of the disputed bonus payments.

Faced with a motion to dismiss, Plaintiffs—who, like Mills, are all citizens of Texas—essentially rewrote two thirds of their complaint by adding numerous factual allegations in effort to maintain this parallel suit in Wisconsin. Yet, despite those

additions, their claims remain outside this court's jurisdiction and are otherwise too implausible to state valid causes of action.

First, in Count I of the Amended Complaint (Dkt. 13, ¶112-127),[1] one Plaintiff – Bou-Matic – alleges that Mills violated the Computer Fraud & Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(5). Despite the federal label, Bou-Matic's claim is insufficient to establish subject-matter jurisdiction under 28 U.S.C. § 1331 because Bou-Matic has not alleged that Mills damaged any computer, only that he deleted files consistent with Bou-Matic's express, written instructions to do so. Additionally, Mills—a citizen of Texas—is not subject to personal jurisdiction in Wisconsin regarding a claim that he deleted files from his laptop computer while out of state.

Unlike the CFAA claim, which focuses on a single action on February 10, 2019, Plaintiff's fiduciary-duty claims in Counts II-III of the complaint cover a litany of unrelated acts stretching back to 2009. Those state-law claims, rather than the $5,000 CFAA claim, form the heart of this case. In effort to federalize them, despite their lack of relationship to the CFAA claim, Plaintiffs allege diversity jurisdiction under 28 U.S.C § 1332 and supplemental jurisdiction. Both fail.

Diversity jurisdiction is unavailable because all parties are citizens of Texas, defeating complete diversity.[2] Even if the Court were to find that the CFAA confers federal-question jurisdiction, there is no reason for the Court to exercise supplemental

---

[1] In the balance of this memorandum, references to the complaint will be made solely by paragraph number.

[2] Mills has lived and worked in Texas since 1965. He also owns a vacation home in Colorado. (Mills Dec. ¶¶ 12-16.) Perhaps Plaintiffs assumed that having a vacation home in Colorado made him a citizen there. It does not.

jurisdiction under 28 U.S.C § 1367. Bou-Matic is the only Plaintiff asserting a CFAA claim, and this claim is not connected to the garden-variety state law claims asserted by Bou-Matic and the other Plaintiffs.

Alternatively, setting aside the complaint's jurisdictional flaws, Counts II and III should be dismissed under Rule 12(b)(6) because they do not allege facts that give rise to plausible claims under the *Iqbal* and *Twombly* standards. Three of the Plaintiffs – John Kotts, Kotts Capital, and Madison One – fail to explain which duties Mills owed to them (as opposed to Bou-Matic) and allege no damages owed to them. Even Bou-Matic alleges no plausible damages claim aside from a few ATM withdrawals, and nearly all of Bou-Matic's claims are time-barred on their face.

**II.    The Court should dismiss Count I – Bou-Matic's CFAA claim – under Rule 12(b)(1) and (2) because Bou-Matic pleads insufficient facts to invoke federal-question jurisdiction and has not established that Mills is subject to personal jurisdiction in Wisconsin with respect to this claim.**

**A.    Bou-Matic fails to plead facts creating plausible inferences of unauthorized use or damage to a computer, both of which are necessary to establish jurisdiction.**

A Plaintiff's mere use of the CFAA label does not establish subject-matter jurisdiction under 28 U.S.C. § 1331. Instead, "federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans v. Lavine*, 415 U.S. 528, 536 (1974). For this reason, a defective and "less than serious" CFAA claim is "woefully insufficient to create jurisdiction." *Landmark Credit Union v. Doberstein*, 746 F. Supp. 2d

990, 994 (E.D. Wis. 2010). Bou-Matic's CFAA claim is inherently unviable for at least two reasons.

First, Bou-Matic's CFAA claim requires plausible, non-conclusory allegations that Mills engaged in computer activities "without authorization." 18 U.S.C. § 1030(a)(5). Bou-Matic admits giving the disputed computer to Mills and allowing him to use it at least through his resignation on February 5, 2019. (¶ 63.) Bou-Matic complains that Mills deleted files on the computer five days later. (¶ 117.) Yet Bou-Matic not only *authorized* Mills to delete files, its attorneys **instructed** Mills to "confirm that any electronic data has been removed from any storage devices on which it may currently exist" and then return the devices. (Mills Dec. Ex. H)[3] In sum, Bou-Matic both told Mills to remove the files and then sued him for doing so. Because the CFAA limits itself to *unauthorized* acts, these facts show that Bou-Matic's CFAA claim is "less than serious." Consequently, it fails to present a federal question. *Cf. Doberstein*, 746 F. Supp. 2d at 994.

Second, Bou-Matic alleges that Mills deleted the local copies of files stored on his laptop. (¶ 114.) Bou-Matic admits, however, that the laptop was connected to and shared data with Bou-Matic's servers. (¶ 113.) Merely removing local copies of a still-obtainable original file does not constitute "damage" of the sort required for a CFAA claim. Damage means "impairment to the integrity or availability of data, a program,

---

[3] This letter is referenced by and incorporated in Plaintiffs' complaint (¶ 115). Consequently, the letter is properly considered in this Rule 12 motion. *Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

a system, or information." 18 U.S.C. § 1030(e)(8). Data that can still be accessed through other means is neither impaired nor unavailable.

Where, as here, the "deleted" data still exists elsewhere, the plaintiff's extra work to access the data is not actionable. *Dana Ltd. v. Am. Axle & Mfg. Holdings, Inc.*, No. 1:10-CV-450, 2012 WL 2524008, at *6 (W.D. Mich. June 29, 2012) (dismissing CFAA claim because, although employees deleted files from work-issued computer, there was no evidence the files were original or otherwise irretrievable); *Cheney v. IPD Analytics, LLC*, No. 08-23188CIV, 2009 WL 3806171, at *6 (S.D. Fla. Aug. 28, 2009) ("[D]eletion of files alone does not constitute damage if the deleted data is still available to the plaintiff through other means.").

This court has recognized a similar principle, holding that blocking someone from their email account—as opposed to destroying the data in the account—is not "damage." *Fischer v. Mt. Olive Lutheran Church*, 207 F. Supp. 2d 914, 926–27 (W.D. Wis. 2002). The same is true here. Whether or not Bou-Matic can still access its emails as they were stored on Mills' computer, it can still retrieve those emails either from its own server

Bou-Matic's CFAA claim is wholly unrelated to the fiduciary-duty claims found in Counts II and III. or from the litigation-hold forensic image that Bou-Matic asked Mills to create. "Reviewing the complaint as it stands, the sole federal claim is woefully insufficient to create jurisdiction and, voiced in a most charitable tone, is a less than serious claim." *Doberstein*, 746 F. Supp. 2d at 994. It appears have been created and plead in an attempt to manufacture federal jurisdiction over purely state-law claims.

Consequently, the court should dismiss the CFAA claim for lack of subject matter jurisdiction.

For the same reasons, the court could, in the alternative, dismiss the CFAA claim with prejudice under Rule 12(b)(6) because Bou-Matic has already repleaded yet still fails to state a plausible claim for which relief can be granted.

### B.    Mills is not subject to personal jurisdiction in Wisconsin on the CFAA claim, because it is based entirely on out-of-state acts.

Plaintiffs do not assert that Wisconsin courts have general jurisdiction over Mills, who is subject to general jurisdiction only in the state of his domicile and the state where he was served—both Texas. *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). Personal jurisdiction must be established on a claim-specific basis. Minimum contacts sufficient to create Wisconsin jurisdiction concerning one cause of action might not establish personal jurisdiction for other claims.[4] That is because a primary purpose of jurisdictional protections is to give people "fair warning that a *particular activity* may subject [them] to the jurisdiction of a foreign sovereign." *See Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment) (emphasis added).

Claim-specific jurisdictional analysis is especially vital here given the number of plaintiffs and the unrelatedness of the alleged facts relevant to the CFAA claim and the

---

[4]    The Seventh Circuit has not directly addressed whether personal jurisdiction is claim-specific, but other circuits uniformly agree that it is, and district courts here follow the claim-specific approach. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009); *Remick v. Manfredy*, 238 F.3d 248, 256-59 (3d Cir. 2001); *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999); *e.g.*, *My Canary LLC v. Cessna Aircraft Co.*, No 16-CV-4000, 2017 WL 201373, at *2 (N.D. Ill. Jan. 18, 2017) ("Personal jurisdiction is a claim-specific inquiry, and a plaintiff bringing multiple claims must establish specific jurisdiction for each claim.").

two state-law claims. Only Mills' Wisconsin contacts relevant to the CFAA claim can support specific jurisdiction as to that claim. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) ("We cannot simply aggregate all of a defendant's contacts with a state—no matter how dissimilar in terms of geography, time, or substance—as evidence of the constitutionally-required minimum contacts."). Plaintiffs cannot "merge" together the Wisconsin facts associated with their other claims, nor can Plaintiffs get by with asserting "that all claims arise from the same general business enterprise." *Hainey v. World AM Communications, Inc.*, 263 F. Supp. 2d 338, 344 (D.R.I. 2003).

Under this claim-specific framework, Wisconsin courts lack jurisdiction over the CFAA claim against Mills. Mills had no Wisconsin contacts pertinent to that claim, let alone contacts sufficient to "purposefully avail [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The operative allegation behind the CFAA claim is that Mills "deleted all of the contents and files on the smartphone and computer." (¶ 64.) However, laptops and cellular phones are mobile devices clearly issued to Mills for use at his Texas home and office. (*See id.*; Mills Dec. ¶ 19.) Bou-Matic does not allege that the cell phone or laptop were housed in Wisconsin. When Mills arranged for removal of copies from the phone and laptop, neither he nor the devices were in Wisconsin. (Mills Dec. ¶ 19.)[5]

---

[5] When ruling on a Rule 12(b)(2) motion, the court may consider evidence outside the pleadings, including affidavits submitted by the defendant. *Seebach v. Beetling Design Corp.*, 46 F. Supp. 3d 876, 880 (E.D. Wis. 2014).

Bou-Matic mentions that Mills' phone and laptop "had access to" Bou-Matic's servers, but Bou-Matic never accuses Mills of deleting information from the server. (¶ 113.) The mere fact that Mills' devices could access Bou-Matic's server is not a sufficient jurisdictional contact. *FCStone LLC v. Buckley*, 864 F. Supp. 2d 816, 820 (S.D. Iowa 2012) (finding no personal jurisdiction in Iowa for CFAA claim even though ex-employer was based in Iowa; employees' mere sending of emails through an Iowa server was too incidental to support personal jurisdiction).

Bou-Matic does not that Mills deleted or tampered with data in Wisconsin or data on the server. It only alleges that Mills, while out of state, deleted data stored on his mobile devices. (¶ 56)[6] It is irrelevant that Bou-Matic issued the devices from Wisconsin and asked Mills to mail them back to Wisconsin. (¶¶ 38; 65.) The same is true for any company that employs out-of-state personnel, and the employer's choice of where to store supplies is not a continuous or systematic jurisdictional contact attributable to the employee. *See Labtest Int'l, Inc. v. Ctr. Testing Inti Corp.*, 766 F. Supp. 2d 854, 864 (N.D. Ill. 2011) ("[I]t is the activity of the defendant, and not the status of the plaintiff, that determines whether jurisdiction is proper[.]").

Simply put, the complaint on its face shows that Mills did nothing in Wisconsin related to the deletion of data on his phone or laptop, and there is no other factual basis

---

[6] Even if Bou-Matic had made such allegations about the server, they would be too little to establish jurisdiction in Wisconsin. *See Ray v. Experian*, No. 3:07-CV-1114-R, 2007 WL 4245459, at *3 (N.D. Tex. Nov. 30, 2007) ("[A]ccessing or sending data in North Carolina to or from a database which happens to be headquartered in Texas is not a purposeful availment by [the defendant] of the benefits and protections of Texas' laws.").

for requiring Mills to defend against the CFAA claim in Wisconsin. Thus, on the CFAA

claim—Count I—there is no personal jurisdiction over Mills

III.   **The court either must dismiss Counts II and III for lack of diversity jurisdiction or should decline to exercise supplemental jurisdiction because Counts II and III predominate over the CFAA claim.**

A.   **If the court dismisses the CFAA claim, then it must dismiss Counts II and III for lack of diversity jurisdiction.**

Without CFAA, diversity of citizenship would be the only possible basis for

subject-matter jurisdiction over Plaintiffs' remaining claims. As the court well knows,

only "complete diversity" is sufficient to trigger federal jurisdiction under 28 U.S.C.

§ 1332(a). *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990).

Without any doubt, there is not complete diversity between the parties to the

complaint. All four Plaintiffs admit they are Texas citizens. (Amended Complaint, ¶¶ 7-

10.) In an attempt to create complete diversity of citizenship, Plaintiffs allege that Mills

is a Colorado citizen. (Amended Complaint, ¶ 11.) That allegation is preposterous: as

the Declaration of Michael A. Mills states, he is 76 years old, has been a citizen of Texas

since 1965, and continues to be a citizen of Texas. (Mills Dec., ¶¶ 1–3.)

Plaintiffs have the burden of proving Mills' citizenship by a preponderance of

the evidence. *Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 424 (7th Cir. 2010).

A natural person is a citizen of the state in which he is domiciled. *O'Neal v. Atwal*, 425 F.

Supp. 2d 944, 946 (W.D. Wis. 2006). Domicile is where a person "intends to live over the

long run." *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012).

Determining domicile requires considering the totality of circumstances, including factors such as residence, place of employment, driver's license and vehicle registration, payment of taxes, location of bank accounts, and whether the individual belongs to any clubs or organizations. *Newell v. O & K Steel Corp.*, 42 F. App'x 830, 833 (7th Cir. 2002); *O'Neal*, 425 F. Supp. 2d at 947.

Mills has lived and worked in Houston since 1965. (Mills Dec., ¶ 2.) Mills started as an accountant at Tenneco in Houston, graduated from law school in Houston, and has been a member of the Texas bar since 1968. (Mills Dec., ¶¶ 3–4.) Since the 1970s, Mills has owned and managed M.A. Mills, P.C., a Texas professional corporation with its current office in Houston. (Mills Dec., ¶ 4.) His driver's license is Texas-issued, and all of his vehicles are registered and insured in Texas. (Mills Dec., ¶ 5.) Mills' bank, broker, doctor, dentist, financial advisor, and attorney are all based in Houston. (Mills Dec., ¶¶ 6, 8.) Mills also pays taxes in Texas, as reflected by the residence on his IRS tax returns. (Mills Dec. ¶ 11.) He is a member of a Houston fitness club and attends synagogue in Houston. (Mills Dec., ¶¶ 9–10.) Mills' business and personal phone numbers are Houston-based, and he receives all of his important correspondence, bills, brokerage, and banking documents at his current address: 8564 Forum Drive, Houston, Texas 77055. (Mills Dec., ¶¶ 7, 14.)[7] Before filing their amended complaint, the plaintiffs

---

[7]     Recently, Mills sold his house in Houston and has been temporarily living with his son at 8564 Forum Drive, Houston, Texas. Ever since selling his house, Mills has remained in the market for a new home in Houston, working with a Houston real estate agent who is assisting him with the Houston-area home search and sends him frequent listings. (Mills Dec. ¶ 17.)

knew all of those facts because Mills stated them in the declaration he submitted in support of his motion to dismiss Plaintiffs' original complaint. (Mills Dec. ¶12)

The link that Mills has to Colorado is that, in 2012, he bought a part-time vacation house in the Broadmoor Resort community of Colorado Springs. He has tried to sell that vacation house since 2016, and it is currently listed for sale. (Mills Dec., ¶ 15) Mills has not moved to Colorado. In fact, when he bought the vacation house, he was working full-time in Houston. (Mills Dec., ¶¶ 4, 13.) He never used the vacation house as a permanent residence and has never claimed any homestead or other tax benefit in Colorado. (Mills Dec., ¶ 13.)

Owning a vacation house—even one that a person spends considerable time visiting—does not establish citizenship in that state. "A second home in another state is not unusual, and courts should be cautious about inferring that someone has abandoned a domicile of many years simply by residing in another state for a time." *Miller v. Fryzel*, 499 F. App'x 601, 603 (7th Cir. 2013) (attorney's affidavit, in which he attested that Illinois always had been his domicile, and acknowledged paying Virginia income taxes but averred that he received mail at his Illinois residence, held an Illinois driver's license, and was registered to vote in Illinois, sufficed to establish attorney's continuing domicile in Illinois despite attorney's residence in Virginia); *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730–31 (7th Cir. 1991) (even buying a house and changing voter registration and tax filings to Florida did not destroy longstanding Illinois citizenship where party "intended no change in the manner or style of his life, the center of gravity of which was and remains in [Illinois]").

11

**B.      Even if the court does not dismiss the CFAA claim, the court should decline to exercise supplemental jurisdiction over Counts II and III because those claims substantially predominate over the CFAA claim.**

If the court concludes that Bou-Matic's CFAA claim establishes federal-question jurisdiction but also finds no diversity jurisdiction, the court may still avoid federalizing the fiduciary-duty claims found in Counts II and III by declining supplemental jurisdiction. In considering whether to exercise supplemental jurisdiction, the court must determine whether the state-law claims "substantially predominat[e] over the claim over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). To make that assessment, the court considers "the scope of the state and federal issues, the terms of proof required by each type of claim, the comprehensiveness of the remedies, and the ability to dismiss the state claims without prejudice." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27 (1966). Relatedly, the court examines "principles of economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997).

Applying these factors, assuming that federal jurisdiction exists under Bou-Matic's CFAA claim, the court should decline supplemental jurisdiction over Counts II and III because, under the facts alleged in the amended complaint "permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3rd Cir. 2003). First, the fiduciary-duty claims involve four separate Plaintiffs, making Bou-Matic's CFAA claim an especially thin reed on which to support supplemental jurisdiction over state-law claims by the three other Plaintiffs. Second, the

CFAA claim is limited to one act on one day—the alleged deletion of files from Mills'
laptop on February 10, 2019. (¶ 114.) In contrast, the fiduciary-claims turn on (1) the
same dispute over bonus payments that is already at issue in the Texas lawsuit,
(2) Mills' supposed criticisms of Kotts to Bou-Matic employees, and (3) dozens of
transactions from 2009 through January 2019. (¶¶ 72–111.) Similarly, the proof required
for a CFAA claim is forensic while the fiduciary-duty claims appear to involve
witnesses and documents spanning a decade.

Judicial economy, convenience, fairness, and comity also counsel in favor of
declining supplemental jurisdiction. Mills has just appeared in this case, the parties
have exchanged no discovery, and no one has sought the court's intervention aside
from this motion to dismiss. In Texas, meanwhile, the court held a hearing and ruled on
a discovery motion, the court entered a pretrial scheduling order and set trial for
March 16, 2020, the court issued a confidentiality order to govern discovery, and Kotts
answered interrogatories and produced documents pursuant a court order. Moreover,
the parties are exchanging briefs on a dispositive motion set for hearing on June 17,
2019. (Milasincic Dec., ¶3.)

Comity weighs heavily in this analysis. The gist of the fiduciary-duty claims is to
attack Mills for duties the Plaintiffs contend he owed as a Texas-licensed attorney. The
appropriate forum for state-law claims between Texas parties and their alleged Texas
attorney is state court in Texas. Finally, this court can dismiss the fiduciary-duty claims
without prejudice to the Plaintiffs, who can easily assert their fiduciary-duty claims in
the Texas suit. *See* Tex. R. Civ. P. 40 (joinder of parties) and 51 (joinder of claims).

When faced with CFAA claims like Bou-Matic's, district courts often dismiss tag-along state law claims because "the crux of [the] case is the state law claims" and "the CFAA claim is only tangential." *Zurich Am. Ins. Co. v. Bowman*, 2:10-CV-00988-RLH, 2010 WL 5239239, at *2 (D. Nev. Dec. 16, 2010) (declining supplemental jurisdiction because the "alleged unauthorized access of information on [computers] is not the core component of [plaintiff's] injuries"); *Contemporary Servs. Corp. v. Hartman*, No. 08-02967, 2008 WL 3049891, at *3 (C.D. Cal. Aug. 4, 2008) (same). In a case involving allegations much like those here, the court found that:

> the CFAA claim is merely "an appendage" to Dedalus's state law claims, which form the "real body of the case." The CFAA claim involves a single allegation-the erasing of the two hard drives-that occurred after Dedalus terminated Banach's employment. The CFAA claim will likely involve limited discovery and analysis of the narrow legal issue of whether Banach accessed a protected computer without authorization and caused damage to the hard drives. In contrast, Dedalus's six state law claims revolve around allegations that Banach breached her fiduciary duties and misappropriated Motherwell's artwork. These allegations focus on a much longer time span than the CFAA claim and are likely to involve extensive discovery. The state law claims will also require legal analysis distinct from the CFAA claim. These state law claims are at the heart of this case and substantially predominate over the CFAA claim.

*Dedalus Found. v. Banach*, No. 09-CIV-2842, 2009 WL 3398595, at *5 (S.D.N.Y. Oct. 16, 2009). The same logic favors the court declining supplemental jurisdiction in this case.[8]

---

[8] *Cf. Miller v. Interstate Auto Group, Inc.*, 14-CV-116-SLC, 2014 WL 4437675, at *3 (W.D. Wis. Sept. 9, 2014) (declining to exercise supplemental jurisdiction in part because "[a]fter the initial determination whether the EFTA applies and what it requires, the only question in plaintiff's case appears to be whether defendant complied with the Act. Defendant's case, on the other hand, involves an entirely separate—and much larger—set of issues than Plaintiff's.").

**IV.    Alternatively, the Court should dismiss Counts II and III for their failure to state a claim upon which relief can be granted.**

Even aside from all their jurisdictional flaws, Plaintiffs' claims in Counts II and III are missing facts sufficient to state plausible causes of action. Rule 12(b)(6) requires pleadings to contain "enough facts to state a claim to relief that is plausible on its face," thereby "nudg[ing][the] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facts, not legal boilerplate, are needed to sustain a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts amount to no "more than the mere possibility of misconduct," dismissal is required. *Id*. at 679.

**A.    The court should dismiss all claims by Kotts, Kotts Capital, and Madison One because they fail to establish themselves as proper plaintiffs and state no plausible damages.**

Although Plaintiffs collapse them into Counts II and III, the complaint actually contains four fiduciary duty claims:

1.    Bou-Matic vs. Mills
2.    Madison One vs. Mills
3.    Kotts vs. Mills
4.    Kotts Capital vs. Mills

Individually as to each claim, each Plaintiff must show a plausible case that (1) Mills owed a fiduciary duty to that Plaintiff; (2) Mills breached that duty; and (3) the breach of duty caused damage to that Plaintiff. *Berner Cheese Corp. v. Krug*, 2008 WI 95, ¶ 40, 312 Wis. 2d 251, 270, 752 N.W.2d 800, 809.

The claims by Kotts Capital and Madison One fail because they have pleaded literally nothing establishing themselves as proper plaintiffs, let alone facts sufficient to demonstrate plausible claims by either of those entities. For example, Kotts Capital and

Madison One do not (and could not plausibly) allege that Mills owes them fiduciary duties to refrain from speaking ill of Kotts. And all of the transactions that Plaintiffs complain about involve Mills spending Bou-Matic funds, not Kotts Capital or Madison One funds. (¶¶ 72-86; 104-111.) The mere fact that Kotts Capital and Madison One have some ownership interest in Bou-Matic does not make them proper Plaintiffs to sue for claims that belong to Bou-Matic. *Freed v. JPMorgan Chase Bank*, N.A., 12 C 1477, 2012 WL 6193964, at *4 (N.D. Ill. Dec. 12, 2012) (holding that "claim 'belonged' to the LLC, not to [its owner], because the claim alleged that [the defendant] had stolen money from the LLC, not from [the owner].").

Kotts' personal claims fail for the same reason. His ultimate ownership interest in Bou-Matic does not entitle him to sue personally for alleged violations of duties owed to Bou-Matic, such as Mills' alleged purchases with Bou-Matic funds. *Id*. Moreover, Kotts has not pleaded sufficient facts to show that Mills violated any fiduciary duty owed to Kotts, let alone that Kotts personally incurred damages as a result.

Merely violating a fiduciary duty is not actionable. Even in the attorney-client context, plaintiffs must prove that the attorney's breach caused compensable harm. The Wisconsin Supreme Court discussed this point in *Krug*. In that case, attorney Krug represented a client, Berner, in a lawsuit against competitors. After the competitors sued Krug as a co-defendant, he started recommending that his clients settle. Even assuming this was contrary to the client's interest and a breach of duty, the court found no fiduciary-duty claim because "Berner presented no evidence to show that the settlement amount was greater than it otherwise would have been absent Krug's

alleged breach of fiduciary duty." 2008 WI 95, ¶¶ 58-59. Texas courts follow the same rule. *See*, *e.g.*, *Brown v. Green*, 302 S.W.3d 1, 11 (Tex. App.— Houston [14th Dist.] 2009, no pet.) (finding no fiduciary-duty claim where client could not explain how lawyer's disclosure of confidential information caused any specific harm).

In Counts II and III, Kotts implies that Mills owed duties to Kotts to refrain from (1) internecine gossip about Kotts and (2) encouraging Bou-Matic's employees to quit. (¶¶ 54-55.) Neither of those supposed duties fits within any traditional concept of the duty of loyalty.

Even assuming that Mills owed such duties to anyone – let alone Kotts personally – the complaint confirms that Kotts incurred no damages. According to the complaint, Mills spoke poorly of Kotts in an effort to (1) get Bou-Matic employees to quit and (2) receive a bonus. (*Id*.) Yet Kotts never alleges that any employees did quit or that any Plaintiffs paid bonuses to Mills in response to his alleged improprieties. Effectively, Kotts is asserting claims for attempted breach of fiduciary duty—a cause of action that does not exist in Wisconsin. In short, Kotts has no plausible claims for breach of fiduciary duties.

**B.  The court should dismiss those portions of Bou-Matic's claims that lack any plausible damages allegations or that are time-barred.**

Bou-Matic asserts four distinct claims for breach of fiduciary duty. (¶ 136.) First, Bou-Matic claims that Mills gossiped about Kotts to other employees. Second, Bou-Matic complains that Mills tried to insert himself into an ultimately unsuccessful effort to sell Bou-Matic to Juniper Investment Company. These first two claims fail for the

17

same reason as the other Plaintiffs' claims: lack of damages. No one quit Bou-Matic in response to Mills' comments, and Bou-Matic does not claim that Mills caused Juniper to decide against buying the company. (¶ 102.) Bou-Matic merely complains that, had Juniper proceeded with buying, Mills was seeking part of the sale proceeds. (¶ 92.) Because the sale never happened, Bou-Matic lost no money due to Mills' theoretical attempt to benefit from the proceeds of this never-realized sale.[9]

Bou-Matic's third and fourth fiduciary-duty claims, while based on false assertions, at least veer closer to traditional fiduciary-duty territory. Specifically, Bou-Matic alleges that Mills, while acting as Bou-Matic's business manager, misspent company money for personal use. (¶¶ 72-86; 104-111.) These claims are based on allegations that Bou-Matic knows to be false,[10] but—more pertinent for Rule 12(b)(6) purposes—also demonstrate their own untimeliness.

First, Bou-Matic complains about a purchase of pumps from Airtech in "early 2016." (¶ 75). Mills left Bou-Matic with sufficient records for Bou-Matic to have learned all pertinent facts about this transaction in real time, although Bou-Matic claims that it took no steps to review those records until filing this lawsuit. (¶ 86). The statute of

---

[9] Bou-Matic notes that it was paying Baker Botts LLP to draft transaction documents during the negotiations with Juniper (¶ 103), but Bou-Matic would have had to pay its transactional attorneys for their work regardless of how Mills and Bou-Matic agreed to split the proceeds of the sale that never happened.

[10] For example, Bou-Matic states that Mills purchased a collectible shotgun while on business in London in 2010. (¶ 108). In reality, Kotts – who collects antique weapons – instructed Mills to buy the gun *for Kotts* because Kotts' own Bou-Matic credit card was unavailable at the time. Kotts then rushed the gun to his private jet so he could conceal it from customs officials as part of a longstanding Kotts plot to defraud the U.S. government of tariff revenue on the luxury goods Kotts buys overseas. In sum, Kotts' characterization of this gun purchase as a breach of duties by Mills is disingenuous at best and Rule 11 material at worst. (Mills Dec. ¶ 19)

limitations for fiduciary-duty claims is two years. *Zastrow v. Journal Communications, Inc.*, 2005 WI App 178, ¶ 2. Consequently, Bou-Matic cannot sue in 2019 for actions that happened in 2016. *Id.* Neither Bou-Matic's failure to timely review its own expense records nor Bou-Matic's conclusory recitation of the word "concealment" are enough to toll limitations. *See Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 340 (1997) ("Plaintiffs may not ignore means of information reasonably available to them, but must in good faith apply their attention to those particulars which may be inferred to be within their reach.").

Similarly, Bou-Matic sues Mills over unspecified cash withdrawals "using his Bou-Matic visa card" from 2009 to January 2019. (¶ 110.) Mills agrees that any withdrawals after May 22, 2017 (two years before Bou-Matic's amended complaint) are within the limitations period. However, all claims based on withdrawals prior to May 22, 2017 are now time-barred. *Zastrow*, 2005 WI App 178, ¶ 2. Bou-Matic had its credit-card records in real time and cannot now cite those records, some of which are 10 years old, to revive stale claims. *See Doe*, 211 Wis. 2d at 340.

In sum, the only fiduciary-duty claim that may pass Rule 12(b)(6) scrutiny is Bou-Matic's claim for cash withdrawals after May 22, 2017.[11] For the reasons above, all-other fiduciary-duty other claims should be dismissed with prejudice given that Bou-Matic already took one opportunity to replead. If the cash-withdrawal claim is the last claiming, standing, however, then it too should be dismissed because it would not even

---

[11] To be clear, extrinsic evidence will also reveal even this timely asserted cash-withdrawal claim to be meritless, and the claim related to post-May 2017 withdrawals can be quickly disposed of through a motion for summary judgment after the case is appropriately narrowed.

satisfy the $75,000 amount-in-controversy requirement for diversity jurisdiction under

28 U.S.C. § 1332(a). (¶ 108-109.)

## V.   Conclusion

For the foregoing reasons, the Court should grant Defendant's motion to dismiss.

PINES BACH LLP

*/s/ Lester A. Pines*
Lester A. Pines
State Bar No. 1016543
1221 Washington Avenue, Suite 900
Madison, Wisconsin 53703
Phone: (608) 251-0101
Fax: (608) 251-2883
lpines@pinesbach.com

AHMAD, ZAVITSANOS, ANAIPAKOS,
ALAVI & MENSING, P.C.

Steven J. Mitby
Texas Bar No. 24037123 (*admission pending*)
Adam Milasincic
Texas Bar No. 24079001 (*admitted pro hac vice*)
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Phone: (713) 655-1101
Fax: (713) 655-0062
smitby@azalaw.com
amilasincic@azalaw.com

*Attorneys for Defendant Michael A. Mills*